UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

FILED
DEC 13 2004
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY _____
DEPUTY CLERK

| | |
|---|---|
| JANA SMITH | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | ) Civil Action No: SA-03-CA-1118-XR |
| | ) |
| LOWE'S HOME CENTERS, INC. | ) |
| | ) |
| Defendant. | ) |

**ORDER**

On this date, the Court considered the following: (1) Defendant's motion for summary judgment (docket no. 31); and (2) Defendant's motion to strike Plaintiff's supplemental response (docket no. 39).

**Facts and Procedural Background**

Plaintiff was formerly employed by Defendant in its Kerrville, Texas store as an assistant store manager. She claims that the she suffered an occupational injury on February 27, 2003, but continued to work on a light duty basis. She received a merit pay increase in March 2003. On or about May 8, 2003, E.J. Cop, owner of Verde Mountain Land & Cattle Company ("Verde Mountain"), called Plaintiff and telephonically purchased a riding lawnmower ("Husquvarna") and authorized Plaintiff to charge Verde Mountain's Visa credit card for the purchase.[1] Plaintiff's husband, Jeff, who is employed by Verde Mountain, picked up the lawnmower. At the time the lawnmower was picked up by Jeff, Plaintiff discounted the transaction by ten percent because Cop was a frequent customer and also ran the transaction as tax-exempt. In a management sales report,

---

[1] See Affidavit of E.J. Cop.

1

42.

however, Plaintiff indicated that the lawnmower was sold as an "employee sale w/ tax exempt." The lawnmower was returned by Jeff approximately three weeks later. Plaintiff was summoned by the cashier handling the refund because managerial approval was required for refunds exceeding $100. Plaintiff approved the refund.

Plaintiff went on a medical leave of absence from June 2003 until August 25, 2003. Sometime in May, Bryant Truitt, a loss prevention manager in the store, began an investigation into the lawnmower purchase and return. Mr. Truitt testified he began his investigation because a "big ticket item of $3,599.10 was returned" and "the returns counter is your single biggest area of shrink." He thereafter informed Mike Jolley, Lowe's district loss prevention manager. Sometime in late July, Chris Cox, store operations manager, informed a cashier, Jamie Willman, that when Plaintiff returned to work, she "would be terminated as soon as she got back for stealing." When Plaintiff returned to active employment on August 25, she was interviewed by Jolley and she provided a written statement. In that statement Plaintiff acknowledged that Mr. Cop was her friend and landlord, as well as her husband's employer. She further stated that Mr. Cop authorized the purchase of the lawnmower for "his and our properties. I understand now that these are not the way the transactions should go thru [sic] the registers and will cease this practice [sic] to follow proper procedures." At that time she also signed a promissory note to pay $556.85[2] by the following day. Jolley then provided the store manager, Richard Lemoine, with an explanation of his investigation, the policies that Plaintiff allegedly violated, and the written statement and note.[3] Lemoine thereafter

---

[2] At that time Lowe's believed the tractor was returned damaged and calculated this amount as the loss to the store for repairs and diminished resale value. A dispute exists as to whether the lawnmower was really damaged and resold at a loss.

[3] Lemoine denied having any knowledge of Jolley's investigation prior to August 25.

2

immediately discharged Plaintiff. A subsequent "Internal Investigation Briefing" report indicates that an investigation was conducted because Plaintiff "conducted her own sale and refund for a family member and gave an authorized discount to a credit card that did not belong to either party. [Plaintiff] also signed the credit card account and completed the manager verification on the store refund receipt...."

Plaintiff claims her discharge violates Texas Labor Code § 451 (retaliation for filing a worker's compensation claim). In addition, she brings suit for defamation claiming that after her discharge, Defendant's employees told prospective employers that she was discharged for theft.

## Analysis

### Tex. Labor Code section 451 claim

Defendant seeks summary judgment on Plaintiff's worker's compensation retaliation claim asserting that Plaintiff cannot establish that a causal connection or nexus exists between her filing of a worker's compensation claim and her discharge.

> Section 451.001 of the labor code provides that a person may not discharge or in any other manner discriminate against an employee because the employee has filed a workers' compensation claim in good faith. Tex. Lab. Code Ann. § 451.001(1). The employee has the burden of demonstrating a causal link between the discharge or discrimination and the filing of a workers' compensation claim. *Garcia v. Allen*, 28 S.W.3d 587, 600 (Tex. App.-Corpus Christi 2000, pet. denied); see Tex. Lab. Code Ann. § 451.002(c) (providing that employee has burden of proof). A causal connection is established between a plaintiff's protected action and a defendant's retaliation if, but for the employee's action, the adverse employment action would not have occurred when it did. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450-51 (Tex. 1996). The employee need not prove that participation in the protected activity was the sole cause for the adverse employment action. *Id.* at 451 n. 3. The causal connection may be established by circumstantial evidence or by the reasonable inferences drawn from the evidence. *Id.* at 451. Circumstantial evidence sufficient to establish a causal link between termination and filing a workers' compensation claim includes: (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative

3

attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. *Id.* at 451.

*Benners v. Blanks Color Imaging, Inc.*, 133 S.W.3d 364, 369 (Tex. App.-Dallas 2004, no pet. h.). Defendant Lowe's argues here that there is no nexus or causal link because Plaintiff was discharged for violation of a company policy, i.e. being involved in the sale (and return) of the Husquvarna riding lawn mower, on a tax exempt and ten percent employee discount basis[4].

Plaintiff argues that Defendant's reasons for her termination are pretextual. She argues that a poor investigation was done and that the decision to discharge her had been communicated to other managers before the investigation was even completed. She further contends that the lawnmower was purchased by Verde Mountain, her husband's employer, that ten-percent discounts were afforded customers, that the lawnmower was not damaged when it was returned, and the lawnmower was not resold at a loss. She argues that her participation in the sale of the equipment was limited to taking Mr. Cop's telephone purchase, discussing the purchase and discount with her supervisor, Richard Lemoine[5], and as a manager giving her "manager override card[6]" to the cashier, a step that was necessary because of the discount being provided and the tax exemption. Plaintiff argues that her

---

[4]Plaintiff testified that she provided Mr. Cop the ten percent discount because he was a loyal customer. Defendant produced an excerpt of its Management Guide that clearly states "employee prices are authorized for the personal use of a current employee...." Notwithstanding the Management Guide, Plaintiff and Plaintiff's supervisor testified that discounts were extended on numerous occasions to customers.

[5]According to Plaintiff, Lemoine approved the ten percent discount and was excited about the prospect of possible additional sales of these expensive lawnmowers to Cop.

[6]Evidently, the manager's override card is the same card a manager would use to receive his/her own employee discount.

participation in the return of the equipment was limited to initialing the credit card return slip with Mr. Cop's initials.

Plaintiff further responds that she signed her statement and promissory note under duress because she was kept in an extended meeting, but it was necessary to pick up her child from school. She claims that her store manager, Lemoine, had a pattern of retaliating against employees who filed worker's compensation claims, and that he had a financial incentive to do so because his performance bonus was impacted by such claims. She testified that Lemoine instructed her, that despite medical releases that allowed other injured employees to return to their regular positions, to place injured workers in positions where he hoped they would later voluntarily resign, e.g. placing an injured man into a "girly" receptionist position. Plaintiff also testified that Lemoine personally rewarded employees with a steak dinner if they successfully completed 90 injury-free days, and that when one employee became injured, Lemoine walked around the store informing other employees to thank the injured employee for losing their steak lunch. Plaintiff implies that this further demonstrates Lemoine's animus towards worker's compensation claimants. Another manager, David Baker, testified that Lemoine made negative remarks about the financial impact worker's compensation claimants had on the store's financial picture on 3 to 4 occasions. Plaintiff testified that Lemoine always referred to worker's compensation claims in a negative manner during managerial meetings because of the financial impact it had on the store's budget. Further, Plaintiff argues that another assistant manager had engaged in improper activity, i.e. giving himself "steep"

5

discounts on products being used for a home he was building, but that he was not discharged for that offense.[7]

Both parties here attempt to take this Court onto an extended journey that is neither fun, adventurous or educational. After attaching hundreds of pages of documents, Defendant claims no material fact issues exist. In essence, Defendant's argument boils down to the following: Plaintiff, in violation of store policy, gave an employee discount to a non-employee. Alternatively, it argues that Plaintiff's husband was present at the time the lawnmower was picked up and returned, store policy prohibits employees from processing sales or refunds for individuals residing in the employee's household, and Plaintiff should have referred the sale and refund to another manager. Finally, Defendant argues that Plaintiff confessed to an improper transaction.

Plaintiff, after attaching the complete deposition of every individual deposed in this case, argues that the investigation into this transaction was flawed. Whether the Court agrees or not that (1) the investigation was flawed; (2) Mr. Cop should have been interviewed; or (3) a human resources representative should have been more involved are not salient issues. The issue is whether or not fact issues exist as to whether Plaintiff was discriminated against because she filed a worker's compensation claim. The Court concludes that fact issues exist that mandate a denial of Defendant's motion.

Defendant argues that the evidence apparent to the loss prevention personnel justified termination of Plaintiff's employment. However, the loss prevention personnel were not the decision makers regarding Plaintiff's discharge. The only decision maker was Lemoine. Plaintiff presents

---

[7]That assistant store manager was later discharged for having purchases delivered to his house without paying for the delivery charge. He evidently had his purchases placed alongside other customer deliveries, a practice known as "piggy backing."

evidence that Lemoine knew of her worker's compensation claim, that Lemoine had previously articulated his dislike of worker's compensation costs to his store's "bottom line," that Lemoine instructed her to not reinstate injured employees to their original positions in the hopes that they would quit, and that another non-injured manager was not immediately discharged for violation of a similar policy. Defendant's argument that Plaintiff "confessed" and that "only four of the 33 Kerrville employees making worker's compensation claims during Lemoine's tenure were terminated" may be argued to a jury in defense of Plaintiff's allegations, however they do not establish as a matter of law that Defendant is entitled to summary judgment. Plaintiff has produced controverting evidence of a retaliatory motive sufficient to defeat summary judgment. *Ribera v. Pro Communications, Inc.*, 2000 WL 33348724, *6 (W.D. Tex. Nov 28, 2000); *Munoz v. H & M Wholesale, Inc.*, 926 F. Supp. 596 (S.D. Tex. 1996); *Continental Coffee Products Co. v. Cazarez*, 937 S.W.2d 444 (Tex. 1996).

### Defamation Claim

Plaintiff alleges that various managerial agents of Defendant published to third parties that she was terminated for theft, stealing, or "loss prevention reasons" which insinuated theft.

Defendant argues that it is entitled to summary judgment because Plaintiff's knowledge of these claims derive from the store and community gossip mill. To the extent that Plaintiff's claims derive from the gossip mill the Court sustains Defendant's hearsay objection and agrees that publication by non-managerial agents is "no evidence" of publication by Lowe's. *Wal-Mart Stores, Inc. v. Lane*, 31 S.W.3d 282, 290-91 (Tex. App.-Corpus Christi 2000, pet. denied).

Plaintiff further argues that she hired a private investigator (PI) to pose as a prospective employer, and that Trina Cortez[8], head cashier, informed the PI that Plaintiff was discharged for loss prevention reasons. However, a publication that was invited or procured by an agent for the Plaintiff cannot serve as the basis of a defamation claim. *Saucedo v. Rheem Mfg. Co.*, 974 S.W.2d 117, 121 (Tex. App.-San Antonio 1998, pet. denied).

Defendant further argues that it is entitled to summary judgment because truth is a complete defense to Plaintiff's claim. Defendant argues that even if its managers published that Plaintiff was discharged for "loss prevention issues" that statement was true or substantially true. Defendant, however, fails to address Plaintiff's evidence that Trina Cortez told Leti Aguirre that Plaintiff was discharged for theft. Further, Defendant does not address the allegation that Chris Cox, store operational manager, told Jamie Willman that Plaintiff was going to be discharged for stealing. Defendant's motion for summary judgment based on truth as a defense is denied. "One who falsely imputes to another the crime of theft commits slander per se." *Bennett v. Computer Assoc. Int'l, Inc.*, 932 S.W.2d 197, 200 (Tex. App.--Amarillo 1996, no writ); *cf. Marathon Oil Co. v. Salazar*, 682 S.W.2d 624, 630 (Tex. App.--Houston [1st Dist.] 1984, writ ref'd n.r.e.) ("Charging one falsely with the commission of any crime for which he may be punished by imprisonment is libel per se;" therefore, proof of the injurious character of the words is not required). Falsely accusing someone of stealing property falls within the parameters of slander per se. *Bennett*, 932 S.W.2d at 200.

Defendant further seeks to obtain summary judgment by arguing that any statements made by its managerial statements were privileged and made in furtherance of its internal investigation. Plaintiff, however, correctly notes that Ms. Aguirre and Ms. Willman were not interviewed or

---

[8]Neither party briefs the issue of whether the head cashier is a managerial agent.

8

otherwise involved in the investigation. Thus they had no interest or duty in the matter to which the communication related, and the privilege does not apply to any statements published by managers to them. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995)("The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate.").

Finally, Defendant argues that any statements it published to the Texas WorkForce Commission regarding Plaintiff's unemployment compensation claim cannot serve as the basis of any defamation claim. The Court agrees. See Tex. Labor Code § 301.074; *Hardwick v. Houston Lighting and Power Co.*, 881 S.W. 2d 195 (Tex. App. - Corpus Christi 1994, writ dism'd w.o.j.); *Krenek v. Abel*, 594 S.W.2d 821 (Tex. Civ. App.-Waco 1980, no writ)(defendant advised the Commission that plaintiff's employment was terminated because she had misappropriated funds. Court held that defendant's statements to the Employment Commission were absolutely privileged.).

## Conclusion

For the reasons stated above, Defendant's motion (docket no. 31) regarding the Tex. Labor Code § 451 claim is denied. Defendant's motion regarding the slander claim is denied, in part, and granted, in part (docket no. 31). Defendant's motion to strike Plaintiff's supplemental response is denied (docket no. 39).

SIGNED this 13th day of December, 2004.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE